[No. 2569]

IN THE MATTER OF THE APPLICATION FOR THE DISBARMENT OF JOHN ROBB CLARKE AS AN ATTORNEY AND COUNSELOR AT LAW.

[212 Pac. 1037]

1. ATTORNEY AND CLIENT — EVIDENCE INSUFFICIENT TO SUSTAIN CHARGES OF GROSS MISCONDUCT OF ATTORNEY.

Evidence in a disbarment proceeding *held* insufficient to support charges that an attorney at law requested a city solicitor to bring a criminal action to "frame" a third party, or induced plaintiff in a divorce action to commit fraud on the court by testifying falsely as to his period of residence in the state to vest the court with jurisdiction.

ORIGINAL PROCEEDING by the Las Vegas Bar Association for the disbarment of John Robb Clarke, an attorney. **Application dismissed.**

*Edgar L. Martin* and *C. D. Breeze,* for informant.

*F. R. McNamee* and *Leo A. McNamee,* and *Huskey & Kuklinski,* for Clarke.

By the Court, DUCKER, C. J.:

The application for the disbarment of John Robb Clarke was made by F. A. Stevens, an attorney at law, in his own behalf, and also for and on behalf of the bar association of the city of Las Vegas, Clark County, State of Nevada. Citation was issued on said application, requiring the accused to appear before this court

and show cause, if any he had, why the certificate and
license to practice law in the State of Nevada, hereto-
fore granted to him by this court, should not be revoked,
and why he should not be disbarred and precluded from
practicing law in all the courts of the State of Nevada.
The citation was personally served upon him in the
county of Clark, State of Nevada, on the 22d day of
August, 1922, and thereafter, on November 16, 1922,
the matter came on for hearing before this court. At
the conclusion of the hearing we were of the opinion
that the evidence was insufficient to sustain the charges
made by the informant, and entered an order from the
bench dismissing the application.

During the time mentioned in the accusation, John
Robb Clarke was an attorney at law, duly licensed by
the Supreme Court of the State of Nevada to practice
his profession in all the courts of this state, and was
engaged in the practice of law in said city of Las Vegas.
It is alleged that prior to the filing of the accusation,
and since his admission to the practice of law in this
state, he has wilfully and maliciously conducted himself
in a most ungentlemanly·manner in respect to his said
profession, and has been guilty of gross misconduct in
office. The first specific allegation of misconduct in the
application is substantially as follows:

On or about the month of July, 1921, the informant,
F. A. Stevens, was the city attorney of said city of Las
Vegas. It is alleged that at that time and place Clarke,
acting in his capacity as an attorney at law, approached
the informant, and requested him to institute and prose-
cute a criminal action in the municipal court of said
city against a certain person whose true name is not
known to informant; that informant, after having been
fully advised as to the matter, told Clarke that he could
not institute and prosecute said criminal action, for
the reason that it did not appear to him that an offense
had been committed; that Clarke then offered to asso-
ciate himself with informant and assist in the prosecu-
tion of the action; that when informant refused this

request, Clarke said to him, in words to the following effect: "Don't you ever frame these cases with other attorneys in order to make a little extra change?"

The third specific allegation is substantially as follows: That on the 24th day of May, 1922, one Harold S. Webster, through his attorney, John Robb Clarke, commenced an action for divorce against his wife, Alice Clara Webster, by filing with the clerk of the district court in and for said county of Clark, his verified complaint. That the cause of action as set out therein arose outside of the State of Nevada, and, among other things, the complaint contained the following allegation:

"That plaintiff is now, and for more than six months past and immediately preceding the commencement of this action has been continuously, an actual and bona-fide resident of the county of Clark, State of Nevada."

That said allegation was necessary and material in order to vest the court with jurisdiction over the subject-matter of said action; that said action came on for trial in said court on the 4th day of August, 1922, at 10 o'clock a. m., Clarke appearing as attorney for plaintiff, and Webster, being sworn as a witness in said action, testified in effect that he had been an actual, continuous, and bona-fide resident of said city, county, and state from the 12th day of November, 1921, until the commencement of the action, save and except two or three minor absences not to exceed more than four or five days at any one time, and also that he was living and residing in said city of Las Vegas continuously from the said 12th day of November, up to and including the 28th day of December, 1921, without being absent from said city at all.

It is alleged that his testimony as to his continuous presence in said city during the last-mentioned period of time was false and untrue, in that he did not live and reside in said city of Las Vegas, or in the county of Clark, State of Nevada, during said period of time, or any portion thereof; that he then and there knew that his said testimony was false and untrue, and that Clarke

did then and there know that the testimony of Webster was false and untrue, and did wilfully and maliciously, with intent to cause Webster to attempt to commit a fraud upon the court, procure, induce, cause, and prevail upon the latter to so testify falsely in this respect; that all of said period of residence as testified to by Webster was necessary in order to vest the court with jurisdiction over the subject-matter of said action, which was then and there well known to John Robb Clarke.

There was a second allegation of misconduct in the accusation, and, as to that, counsel for the informant stated at the beginning of the hearing that he would offer no evidence to support it. This second allegation was therefore, upon motion, stricken from the accusation by order of the court.

Upon the first charge the evidence is in direct conflict. But two witnesses testified concerning it, the informant, F. A. Stevens, and the accused. The former's testimony was furnished by deposition, and is substantially as alleged in the information. He testified that after he had declined to institute and prosecute the criminal action at Clarke's request, the latter said to him: "Don't you ever frame these cases with other attorneys so as to make a piece of change?" to which he replied, "No; we don't do that kind of business out here." No one was present except himself and Clarke. Clarke, who was sworn as a witness in his own behalf at the hearing, denied that any such conversation ever occurred. If Clarke made the inquiry attributed to him and was serious in making it, we might well find that he, as an attorney at law, had wilfully attempted to induce informant, as city attorney, to use his office for an unlawful purpose. Such action would amount to gross misconduct warranting his disbarment. But in view of the state of the evidence in this regard, we are unable to say that the allegation is proven. The burden of proof was on the informant. On account of the highly penal nature of a judgment of disbarment, affecting so adversely the whole future of an accused, courts will

not disbar on doubtful evidence, or where there is substantial conflict in it.

The evidence introduced to sustain the third allegation of misconduct was also furnished by deposition. A brief summary of it, and of the evidence introduced by Clarke, will show that this allegation is not sustained. The deposition of Harold S. Webster sets forth substantially that he arrived in Las Vegas on the 30th day of December 1921, and had not previously resided there; that on the 24th day of May, 1922, through his attorney, John Robb Clarke, he filed a complaint for divorce against his wife, Alice Clara Webster, in the district court in and for Clark County, alleging that he had been continuously an actual and bona-fide resident of the county of Clark, State of Nevada, for more than six months immediately preceding the commencement of the action; that a default was taken, and the action came on for trial in said court on the 4th day of August, 1922, Clarke appearing as attorney for plaintiff; that Webster was sworn as a witness, and in answer to questions propounded by his attorney and by the court testified that he came to Las Vegas, Clark County, Nevada, on the 12th day of November, 1921; that a continuance was had until 11 o'clock, and on cross-examination by a committee of the local bar appointed by the judge of the court, he maintained that he had resided in Las Vegas since November 12, 1921; on the next day, August 5, 1922, another attorney, Mr. Breeze, having been substituted in the action as his attorney in the place of Clarke, he testified that his testimony given the day before as to his residence commencing on November 12, 1921, was incorrect, and that it actually began on December 30, 1921.

In reference to Clarke's connection with this false testimony Webster deposes substantially as follows: That he first met Clarke at a dance in Las Vegas on the 31st day of December, 1921, and about the middle of the following January had a conversation with him, in which he told Clarke that he might figure him as

a prospect or client in a divorce action, and telling him that his time would be up about the 1st of July; that about the last of February, 1922, in Clarke's office, he employed him as his attorney in the divorce matter, and in the conversation which ensued the former impressed it upon him that he must have a residence of full six months before starting the action; that about the 1st of May, 1922, in Clarke's office, while he was unable to quote the exact words, Clarke said to him, "Isn't it about time we were able to file this case?" and he replied, "I don't think we can file yet, because I haven't been here for a sufficient time," to which Clarke replied, "Don't you think you came about the middle of November? If you came about the middle of November, your six months would be up about the middle of this coming month." Webster said that he accepted this suggestion.

He stated that Clarke knew at the time the complaint was filed, or before, that he (Webster) was not in the city of Las Vegas from November 12 to December 30, 1921; that they discussed the possibility of his staying at a hotel during this period, and he stated to Clarke that that would be impossible, as there was no registration; that Clarke said, "Don't you know some friend with whom you could have stayed?" He replied, "I don't know of anybody now that is in town that I knew then, except Mr. Montgomery"; that Clarke then said, "Do you think Mr. Montgomery would be your witness for that period?" that he replied, "I will see him and find out"; that Montgomery went to see Clarke, who prepared an affidavit for him, which stated in substance that the former knew Webster as a resident of Las Vegas from and about the middle of November until affiant left Las Vegas; that Clarke did not procure or induce him to testify falsely, except by way of suggestion, nor know precisely from any statement of his that he did not come to Las Vegas on the 12th of November, 1921; that Clarke indirectly expressed some concern as to difficulties that might arise in the trial of

the case on the question of residence, and mentioned other cases that had been put over in the Clark County court where residence had not been sufficient; that the complaint in the divorce action had been filed about the 1st of May, 1922, and signed by him at that time, or about the 10th or 12th of May; that he (Webster) verified the complaint before it was filed; that Clarke stated that he would file in a few days; that in a few days he asked Clarke if he had filed it, and the latter said no, and upon being asked when he was going to file it said in a few days; that on three or four occasions he asked Clarke when he was going to file, and finally they went to the clerk's office together and filed the complaint; that he (Webster) had a conversation with the local bar association in the district attorney's office, and was told that the course he was about to pursue—that is, to dismiss the case and tell the whole truth about the matter—was the only course to follow; and that he was told that there would be no charge preferred against him.

Clarke testified that he first met Webster at a dance in Las Vegas on the evening of December 31, 1921, and the latter then told him that he had been in Las Vegas for some little time and had not been out before to any dance; that he was employed as Webster's attorney early in May, 1922; that Webster seemed to be reasonably familiar with the divorce laws, and knew that the required residence was six months; that he impressed upon Webster that residence of six months was the one point on which he would have to have corroborative testimony and asked him to find some one to corroborate the statement that he had been there for the full period; that Webster suggested Montgomery, and the latter told him in the former's presence that Webster had been in Nevada and in Las Vegas from about the middle of November; that Montgomery made an affidavit to the effect, and he had no reason for disbelieving them; that he drew the affidavit at Webster's request from the facts stated by Montgomery; that he told Webster

the affidavit would be worthless as evidence if the suit
was contested, but, as the latter was insistent, drew it
to humor him; that they never discussed the matter of
hotel registration; that he told Webster to get a resi-
dence witness, a reputable resident of Las Vegas, who
had seen him and knew that he had been there during
the six months; that Webster had insisted on getting
service of summons by publication, but after a number
of conversations finally admitted that he could locate
his wife; that he (Clarke) then took the matter up
with an attorney in the town where Mrs. Webster was,
and had personal service made; that he may have said
to Webster, "Is your time up?" but if he did it was not
with any intention of dating the time back, but merely
because he presumed Webster had come to Las Vegas
in November; that Webster told him on numerous
occasions that he had been in Las Vegas some time
before they met, and never told him his time would be
up in July; that he did not know at the time the com-
plaint was filed, or at the time Webster testified, that
he had not been a resident of Clark County from the
12th day of November, 1921, and believed that he was
a resident for a period of more than six months; that
he based his belief upon Webster's statements to him;
that he never expressed any fear that there would be
difficulty about Webster's residence; that Mr. Max-
well testified at the trial that he had known Webster
from about the middle of November; that Webster
came to Clarke's house on the night of the 4th of
August, 1922, and tried to induce the latter to leave
town, saying that it would put him (Webster) safe;
that Clarke told him he did not see any reason why he
should leave, and intended to stay, and if Webster had
testified falsely it was up to him to clear his own skirts
in the matter of perjury.

The testimony of Mrs. John Robb Clarke, Mrs. George
Sanderson, and Mrs. Henry Shrader was taken by depo-
sition. The former testified that she met Webster and
had a conversation with him at the dance on the night

of December 31, 1921, and in the conversation he had led her to believe that he had been in Las Vegas for some time, but it was the first time he had been out in society.

Mrs. Sanderson testified that she had met Webster at this dance, and he told her that he had been in Las Vegas for a couple of months, and intended to stay a couple of months longer.

Mrs. Shrader testified that she had met him at the dance, and he told her that he had been in Las Vegas some time, but this was the first time he had been out to a dance.

From the foregoing synopsis of the testimony it appears that the evidence in support of the third allegation is far weaker than that adduced to sustain the first allegation. In the first instance there is testimony of a reputable attorney holding a responsible public office, while in the latter evidence is furnished solely by a witness who appears to have no regard for an oath. He admits that he knowingly verified a complaint containing materially false statements as to his residence, and thereafter deliberately swore falsely in this respect for the purpose of persuading the court that it had jurisdiction in his case.

His assertions that Clark knew he had not been in Las Vegas from the middle of November, and suggested that he should commence his residence from that date and procure a witness to corroborate him in this respect, are all denied by Clarke. There is nothing in the record affecting his credibility. According to the testimony of three persons, two of whom at least appear to be disinterested witnesses, Webster told them that he had been in Las Vegas for some time prior to December 31, 1921. It is therefore not improbable that he made the same statement to Clarke.

For the reasons given, we are of the opinion that the charges preferred have not been sustained by the evidence.