**CHAPPELL, In Re**

Ohio Appeals, 7th Dist, Belmont Co

No 3560. Decided May 31, 1938

C. E. Timberlake, St. Clairsville, W. V. Frazier, St. Clairsville, and A. W. Kennon, St. Clairsville, for Bar Committee.

Charles S. Sheppard, Cambridge, and Edward L. Metz, St. Clairsville, for respondent.

MONTGOMERY, PJ, SHERICK and LEMERT, JJ, (5th Dist) sitting by designation.

**OPINION**

By LEMERT, J.

This, a disbarment proceeding, was instituted by the summary action of the judge of the Common Pleas Court of Belmont County, Ohio, by ordering an investigation of a complaint filed with the court and naming a committee of the Bar Association to investigate and prosecute the same.

This committee filed a motion embracing some nineteen specifications and during the hearing the committee added another, making twenty in all.

The matter was submitted to the court below after a lengthy hearing, and the court found the respondent not guilty and found nothing in his conduct warranting disciplinary action by the court. The committee now seeks to reverse that finding of the court by an appeal on questions the law, and while a number of errors are specified in the brief of the committee, we are of the opinion, after an examination of the record and the reading of the briefs,

that the only question really before this court is, that the decision of the Common Pleas Court is against the weight of the evidence.

At the very outset of this case we are confronted with a motion to dismiss the appeal, for the reason that this court has no jurisdiction to hear the appeal when made by the committee representing the court below, and on this proposition we are brought face to face with §1707 GC. For a construction of that section we find **In Re Thatcher, 80 Oh St page 655**, where the court in that case say:

"The power to discipline attorneys who are officers of court, is an inherent and incidental power in courts of record, and one which is essential to an orderly discharge of judicial functions."

### Sec 1709 GC provides:

"Review of proceedings.—In the case of suspension or removal of an attorney at law by the Common Pleas Court, an appeal on questions of law may be had to the Court of Appeals, and the sentence of either the Common Pleas Court or the Court of Appeals, may be reviewed on appeal on questions of law in the Supreme Court. If such suspended or removed attorney at law shall desire a modification of the decree of suspension or removal, he shall file a written motion therefor, in the court which entered such decree."

It is to be observed that while the section above quoted gives the respondent, Mr. Chappell, in this case certain rights of appeal, it does not deny to the committee the same right.

**Article 4, §6 of the Ohio Constitution** provides, in substance, that Courts of Appeal shall have appellate jurisdiction to review, affirm, modify, and revise judgments of the Courts of Common Pleas, as may be provided by law.

The Legislature of this state has made provisions to review, affirm, modify or revise judgments, final orders, etc., by §12223-27 GC; that section being a part of the recent Practice Act, effective in 1936, as follows:

"Appeal on questions of law to Court of Appeals.—A judgment rendered or a final order made by a Court of Appeals or a judge thereof, Court of Common Pleas or a judge thereof, Probate Court or insolvency court, may be reversed, vacated or modified by the Supreme Court by appeal

on questions of law except cases in which the judgment of the Court of Appeals is final, as provided by the Constitution, and such judgment shall not be subject to modification, vacation, or reversal."

The jurisdiction of the Court of Appeals was fixed by the Constitution, with no power in the General Assembly to abridge, enlarge, limit or interfere with it in any respect.

In the case of **Cincinnati Polyclinic v Balch, 92 Oh St 415**, the court said:

"1st Syllabus: §6, **Article 4 of the Constitution of Ohio** as amended September 3, 1912, confers jurisdiction upon the Courts of Appeals to review, affirm, modify or reverse the judgments of the Court of Common Pleas, Superior Courts, and other courts of record within the district. The General Assembly has no power to enlarge or limit the jurisdiction conferred by the Constitution of the State, but may provide by law for the method of exercising that jurisdiction."

The respondent seems to urge that the fact that the Common Pleas Court having decided that Mr. Chappell was not guilty, that it would be inconsistent for the court to seek to have a higher court reverse this decision. We note that the committee was appointed by the Common Pleas judge to prosecute proceedings upon the hearing of said charges in court. However regardless of the language that may have been used as to the conduct of the proceedings, the fact still remains that under **Article 4, §6 of the Constitution**, that the Court of Appeals has jurisdiction to review, affirm, modify or reverse the judgments of the Court of Common Pleas.

Respondent claims that the final order in disbarment proceedings is not a judgment. Suppose that the findings of the court had been against Mr. Chappell. We can hardly conceive of the respondent claiming that that was not a judgment. It was at least a final order, and from a final order appeal can be perfected. See §12223-27 GC, hereinbefore cited.

So, entertaining the views hereinbefore expressed, we find that said motion to dismiss the appeal is not well taken, and the same is overruled, and exceptions may be noted.

Coming now to the merits of this case and for the purpose of clarity, we repeat that this is a disbarment proceeding, filed in the Common Pleas Court of Belmont

County, Ohio, by a committee composed of three men of the bar of said county, to-wit, C. E. Timberlake, A. W. Kennon and W. V. Frazier, charged by the court with the duty of preferring charges of misconduct, or unprofessional conduct in office involving moral turpitude or conviction of crime involving moral turpitude against W. O. Chappell, an attorney-at-law, a member of the bar of said Belmont County.

Sec 1707 GC governs the proceedings and reads as follows:

"The Supreme Court, Court of Appeals and Court of Common Pleas may suspend or remove an attorney at law from office or may give private or public reprimand to him as the nature of the offense may warrant for misconduct or unprofessional conduct in office involving moral turpitude, or for conviction of a crime involving moral turpitude."

Bouvier's Law Dictionary defines moral turpitude as:

"An act of baseness, vileness or depravity in the private or social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man".

The Century Dictionary defines moral turpitude as:

"Base or shameful character; baseness, depravity or wickedness; a base or shameful act."

In these proceedings no charge is made of a conviction of crime. The sole question for determination is, do the charges and specifications and the evidence prove misconduct or unprofessional conduct in office involving moral turpitude? If this question is answered in the affirmative, then the court can do one of three things, to-wit,

1. It may suspend the attorney from office.

2. It may remove him from office.

3. It may give private or public reprimand to him, as the nature of the offense may warrant for misconduct or unprofessional conduct in office involving moral turpitude.

This case has been well presented in oral argument and comprehensive briefs have been furnished by the committee and the attorneys for the respondent, which have

been a great aid to the court in arriving at a conclusion between the parties to this controversy.

The matter grows out of and relates to the connection of the respondent, an attorney, secretary and director for the Home Savings & Loan Company of Barnesville, Belmont County, Ohio. He was the attorney for that corporation from May 5, 1909, to May 9, 1934, and was secretary of the company from early in its organization until he resigned the office in 1925, and was one of its directors from November 14, 1910, to May 9, 1934.

We note from the record before us that this matter was before the court below on a demurrer and an opinion rendered on September 19, 1936, overruling said demurrer. At that stage of the proceedings there were nineteen specifications preferred against the respondent. Later was added specification No. 20, which evidently was intended to add force to specifications Nos. 13 and 14, which have to do with two $1600 transactions.

Briefly, we note that the respondent was trustee of what is referred to as the "Lizzie Speer estate", and was the executor of what is designated as the "Estate of Mary Blakemore." We have carefully read the record and the evidence on this particular specification and controversy is not such as will warrant the court in finding that there was that kind of degree of moral turpitude in office justifying a disbarment, as provided by §1707 GC.

With reference to these specifictaions, to-wit, No. 13, No. 14, and No. 20, which should be construed together: They relate to matters involving the respondent in two trust estates; the one in which he was trustee and the other executor. He is charged in specifications Nos. 13 and 14 with unlawfully appropriating to his own use and benefit $1600 from each of said estates. The respondent denied this and he is corroborated in his testimony by the evidence of Miss Hunt and his son-in-law, Ballard, who is now serving a term in Ohio Penitentiary for his part in this affair.

With reference to all these specifications which have to do with the transactions between The Home Savings & Loan Company and the respondent, we note that §11 of the by-laws of The Home Savings & Loan Company provide that all loans made were to be approved by the finance committee of the company. The record evidence does not show that any of the numerous loans granted to W. O. Chappell were not

approved by the finance committee.

In Re Hawke, 107 Oh St 349, the Supreme Court of Ohio, in discussing the inherent power of the court to disbar or suspend attorneys-at-law from the practive of their profession, and that they are an exception to the general rule as to other licensed persons said:

"We do not understand that when the Legislature confers a right upon a citizen of Ohio, any court has any inherent right arbitrarily, or for any cause other than that enumerated in a statute, to deprive any such person of any such right, even though he be an attorney at law who is a quasi member of the court."

The evidence must be clear and convincing, that is to say, that degree of proof which will produce in the mind of the court a firm belief or conviction of the truth of the charges and specifications sought to be established.

In Ohio Jurisprudence, Vol. 4, page 524, it is held that:

"Not every reprehensible transaction will be grounds for disbarring an attorney, for the judgment of the court must be predicated on at least one of the grounds enumerated in the statute. A judgment of disbarment is the severest penalty which can be imposed upon an attorney, insofar as the privileges of his office are concerned, and should be resorted to only when other methods of vindicating the dignity of the law appears to be inadequate and the misconduct of the attorney is of such character as proves him unfit to discharge the duties of his office."

So that, what are the grounds incorporated in the statute, if any, which justify a judgment of disbarment in this case?

It is claimed in argument that the criminal statute, §13190 GC was violated by the respondent. The testimony in the record does not support this claim. If it did support such claim, this court would be without authority under the statute to consider it until a conviction of the respondent is first secured. We are unable to find by clear and convincing evidence that this respondent has done any act whereby he can be successfully charged with statutory moral turpitude, and this court is without power to either suspend, reprimand or remove the respondent for misconduct or unprofessional conduct in office involving moral turpitude until it is shown, by clear and convincing evidence, that he has been guilty of such official acts.

So, in concluding, we have to say that the record before us does not show that the respondent ever deceived the court or misrepresented any matters to the court or that he defrauded any client, and that the sole and only charge is concerning his conduct with the Home Savings & Loan Company, excepting the two trust estates hereinbefore discussed, and the record before us convinces us that the officers of the Savings & Loan Company were not altogether free from blame for their acts and conduct in this controversy.

It seems to us that the whole sum and substance of these charges are that the loans as viewed in 1937 are excessive—that is, that there has been a loss. That being true, we are of the opinion that these transactions should be viewed in the light of the times when made and not in the light of a period following a depression. We are therefore of the opinion that the evidence in this case warrants no other conclusion than the conclusion reached by the trial court, and that such finding of the trial court was not manifestly against the weight of the evidence.

It therefore follows that the finding and judgment of the trial court will be affirmed. Exceptions may be noted.

MONTGOMERY, PJ, and SHERICK, J, concur.