STATE BAR OF NEVADA, a Public Corporation, Petitioner, v. JOHN F. SEXTON, Respondent.

No. 3491

August 22, 1947.                    184 P.2d 357.

*Chas. A. Cantwell, Douglas A. Busey,* and *Leslie B. Gray,* all of Reno, for Petitioner.

*Gordon W. Rice,* of Reno, for Respondent.

## OPINION

By the Court, HORSEY, J.:

This is an original proceeding commenced in this court on May 5, 1947, by the state bar of Nevada, a public corporation, as petitioner, to revoke the license of John F. Sexton, the respondent, to practice law in the State of Nevada.

It is alleged in paragraph II of the petition that on the 25th day of June, 1946, said respondent filed with the secretary of the state bar of Nevada an application, in the form of an affidavit, for admission to the bar of the State of Nevada, and license to practice law in all the courts of said state, in which he stated, under oath, that he was (referring to the time of making such affidavit) an actual, bona fide resident of the State of Nevada, that he had resided in Nevada for a period of five years, at Palisade and at Carson City, that he had considered Nevada his legal residence since achieving his majority and that he had always considered Nevada his home.

And in paragraph III of the petition it is alleged, in substance, that on the 9th day of November, 1946, the respondent filed with the committee of bar examiners of the state bar of California, an application for admission to the bar on motion without examination, in which he stated, under oath, that he was born in California, that he had lived continuously in California until 1938, at which time he was offered a position in Washington, D. C., and that he was domiciled there while attending school; that he was a bona fide resident of Berkeley, California, when he entered the armed forces in 1942, and that his permanent address upon separation from the service on February 2, 1946, was Berkeley, California; that, although he was (at the time of making the said affidavit) located in Reno, Nevada, with the department of labor, he maintained his residence at Berkeley, California.

It is further alleged, in paragraph V of the petition,

that the said affidavits of respondent are inconsistent and in direct conflict with each other, and they evidence an intent to deceive and such a disregard for the sanctity of his oath as to establish respondent's lack of good moral character and his consequent unfitness to practice law.

And in paragraph VI of the petition it is alleged that it appears from the detailed recitals in respondent's California application that it is not true, as stated in his Nevada application, that he was, on June 25, 1946, and for a period of five years prior thereto had been, an actual bona fide resident of the State of Nevada, and that, in particular, it appears therefrom that he was not a bona fide resident of the State of Nevada for a period of six months prior to the examination of September, 1946, nor was he entitled to take such examination, nor was he entitled to admission to the state bar of Nevada.

Pursuant to the prayer of the petition, a citation was duly issued by this court, citing and requiring the respondent to appear before the justices of this court, at Carson City, Nevada, on the 24th day of June, 1947, at ten o'clock a. m., then and there to show cause, if any he had, why his license to practice law in the courts of the State of Nevada should not be revoked, and his name stricken from the roll of attorneys of this court.

On June 19, 1947, the respondent caused to be filed his motion to strike certain portions of the petition, upon various legal grounds therein stated, and on the same date caused to be filed a demurrer to the petition, alleging, in substance, that sufficient facts are not stated in the petition to support an order revoking respondent's license to practice law, or to support an order directing that respondent's name be stricken from the roll of attorneys of this court.

As a further ground of demurrer, it is alleged in paragraph IV of the demurrer:

"That petitioner does not have the legal capacity or authority to determine, or seek to have determined in a

proceeding such as the above captioned cause, whether Respondent is qualified to become an officer of the above entitled Court as an attorney and counselor at law, or for what cause respondent ought to be removed, or his license revoked, or his name stricken from the Roll of Attorneys of the above entitled Court, for the reason that said legal capacity and authority to make such a determination rests solely and exclusively with the above entitled Court, and that said judicial power has, by sound and just judicial act of this Court, been heretofore by said Court duly and regularly exercised by said Court's order of the 10th day of December, 1946, in licensing Respondent as an officer of said Court to practice law in the State of Nevada."

We will consider first the ground of demurrer set forth in said paragraph IV of the said demurrer and above stated, which, in substance, is that the petitioner, state bar of Nevada, a public corporation, has not the legal capacity to institute or to maintain this proceeding.

■ Under the common law, and the law prevailing in all of the states comprising the United States, it is universally recognized that a court having power to admit a person to the practice of the law generally in the courts of the state, has the inherent power to revoke such admission or right to practice, upon the ground of fraud and imposition upon the court perpetrated by the applicant for such license, in obtaining same. Courts of last resort have very generally exercised this power, especially in the earlier years of our country's history, independently of statute. Sometimes, and in certain cases, the presiding judge, or justice, would appoint a member, or members, of the bar to prepare and present the matter to the court. In other cases, or in other states, matters of that nature were considered so fraught with the public interest and welfare that such a proceeding was instituted upon the relation of the attorney general of the state, or of the prosecuting attorney of the particular county in which the respondent practiced his profession,

and was presented and prosecuted by such officer. Whichever method was employed, the public officer or member of the bar presenting the matter was always subject to the direction of the court, of which he was merely a representative in such proceeding.

Long before there were any integrated bars, or public corporations known as state bars, and when there were few bar associations, and such as existed were weak and very limited in the scope of their operations as compared to those of the modern bar associations of the present day, statutes were enacted relative to; and providing proceedings for, the removal from practice of attorneys for misconduct, by revocation of license, disbarment or suspension, and providing otherwise for disciplining such recreant attorneys.

In Nevada such a statute was enacted, and was approved and became effective October 31, 1861, same being sections 591–617, vol. 1, N.C.L. 1929. Such act is entitled, "An Act relative to attorneys and counselors at law."

Section 14 of the act, same being section 604 N.C.L., provides for removal or suspension of an attorney and counselor by the supreme court, "and by no other court in the territory," for either of the following causes arising after his admission to practice:

"First—Upon his being convicted of felony or misdemeanor, involving moral turpitude, in either of which cases the record of his conviction shall be conclusive evidence. Second—For wilful disobedience or violation of the order of a court requiring him to do or forbear an act connected with or in the course of his profession. Third—For misconduct in office, or for good cause shown."

The word "removal" in said act of 1861 has consistently been construed and applied by this court to include revocation, as well as suspension and disbarment. Indeed, this was the only act in this state providing for the disciplining of attorneys, or for their

removal, suspension, or disbarment from practice, until the enactment of the state bar act of 1928.

This latter act entitled, "An Act to create a public corporation to be known as 'State Bar of Nevada,' to provide for its organization, government, membership and powers, to regulate the practice of law, and to provide penalties for violation of said act," was approved January 31, 1928. Statutes of Nevada 1928–1929, pp. 13–20; N.C.L. vol. 1, secs. 540–590.

Section 26 of said act, same being section 565 N.C.L., defines the powers of the board of governors as follows:

"§ 26. The board of governors shall have power, after a hearing for any of the causes set forth in the laws of the State of Nevada warranting disbarment, or suspension, to disbar members or to discipline them by reproval, public or private, or by suspension from practice  *  *  *."

It is obvious from the language employed in defining the powers of the board (and there is no other provision of the act vesting the board, or the state bar itself, with other or further powers as to disciplining attorneys or removing them from practice) that such powers are limited to disbarment, reproval and suspension. Revocation of the order of admission, or of the license to practice, is not covered by, nor included within, said provision of section 26 defining such powers of the board of governors, nor within any other provision of the said act.

■ The provisions relative to disbarment, reproval, or suspension are penal in their effect, and, in accordance with the long-settled rule very generally applied, must be strictly construed. Nothing can be read into such provisions by implication. 50 Am.Jur. secs. 407–424, pp. 430–444.

As the great Chief Justice John Marshall said in 1824, in Ex parte Burr, as reported in 9 Wheat. 529, 6 L.Ed. 152:

"On one hand, the profession of an attorney is of

great importance to an individual, and the prosperity of his whole life may depend upon its exercise. The right to exercise it is not to be lightly or capriciously taken from him. On the other, it is extremely desirable that the respectability of the Bar should be maintained, and that its harmony with the Bench should be preserved. For these objects, some controlling power, some discretion, ought to reside in the courts. This discretion ought to be exercised with great moderation and judgment; but it must be exercised; and no other tribunal can decide, in a case of removal from the Bar, with the same means of information as the court itself."

Manifestly, powers granted the state bar and its board of governors by the statute are of such a nature that the rule of strict construction as to penal statutes or provisions must be applied, so as not to confer upon the state bar, or its said board, any powers which have not been clearly and expressly conferred by the statute creating it, or by some subsequent statute.

Section 34 of the state bar act, N.C.L. vol. 1, sec. 573, prescribes in detail the procedure to be followed in the proceedings provided for by the act, and, in the first sentence of said section 34, employs, again, language making clear that the cases of which the state bar and its board of governors shall have jurisdiction, and to which the proceedings enumerated in the said section shall apply, are cases involving only disbarment, suspension or reproval, and not cases involving revocation. Such first sentence of section 34 is:

"In all cases involving disbarment, suspension or reproval, the hearing shall be held in the county of the residence of the party charged, or where the offense is committed."

As to the rule of strict construction of penal statutes, we cite In re Chappell, Ohio App., 33 N.E.2d 393, 397, in which it is held that "the statute regulating the suspension and removal of attorneys * * * should be strictly construed." See, also, Worthen v. State, 189 Ala. 395, 66

So. 686, and State v. Quarles, 158 Ala. 54, 48 So. 499, to the same effect.

It seems reasonable to conclude that those responsible for the draftsmanship of the state bar act, and the legislature in passing it, clearly intended to exclude removal by revocation from the purview of the act. The act expressly mentions the kinds of cases intended to be covered, and by thus undertaking to enumerate them specifically, the legislators, by implication, excluded all others. If it were the legislative intention to include proceedings for revocation, such word, or its equivalent, would certainly have been included in the first sentence of said section 34, in conjunction with the words "disbarment, suspension or reproval," and the parties to be proceeded against thus brought within the application of the detailed procedure provided by said section and the following section 35, which provides among other things, for a hearing in the county of the residence of the accused, for reasonable notice, and a reasonable opportunity to defend by the introduction of evidence, the right to be represented by counsel, and to examine and cross-examine witnesses, and the right to have witnesses subpenaed, and books and papers produced. Perhaps the reason for excluding revocation proceedings from the purview of the state bar act was because such provisions are usually for disciplining or punishing for an act or concealment perpetrated or imposed upon the supreme court at the time of, and to procure or facilitate, admission to the bar, and it may have been conceived by the legislature to be more appropriate, because of such direct imposition upon the court, that all proceedings for revocation, after their commencement, be conducted before this court.

■ We believe the rule, or principle, of interpretation, "expressio unius est exclusio alterius" is clearly applicable in the interpretation of the powers conferred by section 26 of the state bar act (same being section 565, vol. 1, N.C.L. 1929), and that neither the state bar of

Nevada, a public corporation, nor its board of governors, has any power or authority whatever in relation to proceedings to remove an attorney by revoking the order of his admission or his license to practice, or by striking his name from the roll of attorneys entitled to practice law in Nevada. 50 Am.Jur. sec. 429, p. 450.

For this court, by judicial construction, to read into the act a provision for revocation, upon the theory of implied power, would be so clearly violative of fundamental rules of statutory construction, and in such obvious disregard of the legislative intent, as to amount to a judicial usurpation of the powers vested by the constitution exclusively in the legislature.

The instant proceeding for revocation must be deemed to have been brought under and by virtue of such authority or power, if any, as is conferred upon the state bar of Nevada, a public corporation, by the act of 1861, supra. We have hereinbefore quoted section 14 of said last mentioned act, N.C.L. 1929, vol. 1, sec. 604.

It is now necessary to quote, and carefully consider, certain of the procedural sections of said act, particularly sections 16, 17, and 18, same being N.C.L. 1929, vol. 1, sections 606–608, both inclusive, in order to determine whether such sections (which are the only sections of the act applicable to the question of capacity to sue) confer any power or authority upon the state bar of Nevada a public corporation, to initiate, or to act in any capacity in, the instant proceedings against the respondent, Sexton.

Said sections 606–608, inclusive, are as follows:

"§ 606. Proceedings to Remove. § 16. The proceedings to remove or suspend an attorney and counselor, under the first subdivision of section 14th, shall be taken by the court on the receipt of the certified copy of the record of convictions; the proceedings under the second and third subdivisions of section 14th may be taken by the court for matters within its knowledge, or may be taken upon the information of another.

"§ 607. Accusation to be in Writing. § 17. If the proceedings be upon the information of another, the accusation shall be in writing, and shall be presented to the court.

"§ 608. Accusation, What to State. § 18. The accusation shall state the matters charged, and shall be verified by the oath of the person making it, or some other person, to the effect that the charges therein contained are true."

Section 608 clearly states that: "The accusation * * * shall be verified by the oath of the *person making it,* or some other *person.*" (Italics ours.) This sentence unmistakably means that not only the verification, but also the accusation, must be *made by a person,* and must be positive to the effect that the charges therein contained are true.

It must be always borne in mind, in construing this statute, that it was enacted in 1861, in territorial days, sixty-seven years before there was any public corporation known as the state bar of Nevada, and long prior to the organization in this state of any bar association organized according to modern methods. It is conceivable that the members of the legislature of 1861, under the then existing conditions had little reason to consider seriously so wording the act as to permit a bar association, as such, to make the accusation, or its officers, as such, for and on its behalf, to verify same. Such a bar association, if any then existed at all, would have been so localized in its affairs and operations that its officers would have been unlikely to have come in contact, personally, with any considerable number of instances of professional misconduct, enabling them to have the actual knowledge sufficient to justify the verification of the accusation positively. It is obvious from the language employed that the legislators intended to require a verification upon actual knowledge, because of the importance of such a proceeding, same being one to deprive an attorney of the right to practice his profession.

It is equally clear that they had no intention of permitting the accusation by some organization, which could serve to conceal the identity of the real informer and initiator. By requiring both the accuser and the verifier to be a *person,* the accuser is compelled to disclose his identity and assume the financial responsibility which would ensue in the event his accusation was without probable cause, and resulted in appreciably damaging the accused. Furthermore, if the positive verification were untrue, his identity being known, he could be readily subjected to the pains and penalties of perjury.

The contemporary legislative and judicial history of the period embracing the year 1861 clearly discloses that the said act of that year was similar in its requirements, particularly that requiring the verification to be positive and by an individual person, to those in the statutes of many other states. And the construction of such similar provisions by the courts generally was in harmony with that above indicated. Some of the reasons for such construction were such as we have already stated, including the application of the rule, or principle, that penal statutes should be construed strictly.

We will quote very briefly from a few of the decisions of other states, rendered at a time which makes it appropriate, we believe, to consider them contemporary with our statute of 1861, and, therefore, as revealing the legislative and judicial concept of the procedure then generally considered sound and desirable in a proceeding for revocation of the license of an attorney to practice his chosen profession.

In Re McCarthy, 42 Mich. 71, 51 N.W. 963, decided in 1879, it was held that "a bar association is not a recognized body, as such, in proceedings to disbar an attorney, and cannot control the prosecution; the proceeding is in the interest of public justice, and the Supreme Court will examine into and act on it as in other cases involving the position of its attorneys."

In 1867, in New York, it was held that "the supreme court is bound to cause charges against an attorney to

be prepared whenever satisfied, from what has occurred in its presence or from other satisfactory proof, that the ends of justice call for such proceeding." In re Percy, 36 N.Y. 651.

In Missouri, in 1879, in the case of In re Bowman, 7 Mo.App. 569, the court of appeals of that state in substance, held: A proceeding to remove an attorney need not be in the name of the state, but members of the bar may and should file the necessary information against an attorney guilty of improper practices.

And in 1895, in Missouri, in the case of State ex rel. Walker v. Harber, 129 Mo. 271, 31 S.W. 889, it was held that: "Disbarment proceedings may be instituted by the attorney general, or by a member of the bar on his own motion, or a court may require of any member, as a duty, that he prosecute charges against a practicing attorney looking to disbarment."

See, also, State ex rel. Lentz v. Fort, 178 Mo. 518, 77 S.W. 741.

In Kentucky, in 1871, in Walker v. Commonwealth, 8 Bush 86, it was stated by the court: "Now where the party is charged with malpractice without the presence of the court, the correct mode of proceeding against him is by complaint or information made on the oath of some *individual*." (Italics ours.)

In Connecticut, in State v. Peck, 88 Conn. 447, 91 A. 274, the state's attorney was held authorized to present a complaint against an attorney under section 10 of the rules of court, notwithstanding acts 1907 c. 120, authorizing a grievance committee in each county.

The foregoing cases are typical of the cases decided in the period which may be deemed contemporary to our statute of 1861.

Other cases upon the question of who is the proper party to prosecute in such a proceeding, or to act as accuser and verifier in the petition, or complaint, are: Turner v. Com., 1859, 59 Ky. 619, 2 Metc. 619; Wilson v. Popham, 91 Ky. 327, 15 S.W. 859; In re Shepard,

1879, 109 Mich. 631, 67 N.W. 971; People v. Mead, 29 Colo. 344, 68 P. 241; People v. Chamberlin, 242 Ill. 260, 89 N.E. 994; Lenihan v. Com., 165 Ky. 93, 176 S.W. 948, L.R.A.1917B, 1132; State v. Martin, 45 Wash. 76, 87 P. 1054 (under a provision in Ballinger's Code, sec. 4776, similar to the Nevada act of 1861); State Bar Com. v. Sullivan, 35 Okl. 745, 131 P. 703, L.R.A.1915D, 1218; Wernimont v. State, 101 Ark. 210, 142 S.W. 194, Ann. Cas.1913D, 1156; Worthern v. State (Ala.), supra; In re Evans, 22 Utah 366, 62 P. 913, 53 L.R.A. 952, 83 Am. St.Rep. 794.

In California there have been notable changes from time to time, both legislative and judicial, in the law applicable to proceedings for revocation of a license to practice law. In the years contemporary to our Nevada act of 1861, code provisions (Cal.Code Civ.Proc., secs. 289, 290, 291) similar in language and effect to the procedural provisions of said act of 1861 prevailed. There was an important difference, however, as to who was authorized to make the accusation. The language of the California statute, Code Civ.Proc., sec. 291, prior to the amendment effective July 29, 1921, was as follows:

"The accusation must state the matters charged, and be *verified* by the oath of some *person* * * * that the charges therein contained are true." * * * (Italics ours.)

Whilst section 18 of the said Nevada act of 1861, same being N.C.L. 1929, vol. 1, sec. 608, was in this language:

"The accusation shall state the matters charged, and shall be verified by the oath of the *person making it*, or some other *person*, to the effect that the charges therein contained are true." (Italics ours.)

■ Thus, under the California statute the accusation must be *verified* by the oath of some *person*, but no words expressly required that some *person* must *make* it. On the other hand, the Nevada statute required the verification to be by the *"person making it*, or some other *person*,"* thus clearly implying that *only a person*

*could make it,* and required that such *person* or some other *person* must verify it. (Italics ours.) This meant that both the making and the verification in Nevada, under the act, must be by a person.

In California, in such a proceeding in the earlier years, it was customary for the same person to act as informer, accuser and verifier. The matter was usually presented by a committee of the bar, or a bar association, and one of their number with actual knowledge of the facts acted in signing and verifying the accusation. It was held, however, in Re Collins, 147 Cal. 8, 81 P. 220, that the *person verifying* it need not be a member of the *committee presenting* the accusation and conducting the prosecution on behalf of the public. Mr. Justice Lorigan stated in the opinion, however, that *"such person is to be deemed the accuser,* although the charges are *presented and the prosecution conducted* on behalf of the bar association or of the public." (Italics ours.) Still the law remained, under such decision, that the *verifier must be an individual person, and such person was the accuser.* But there was nothing in the California statute which expressly required the verifier to be the accuser, and, apparently sensing that fact and that the statute required merely that the *verifier* be "some person," there were a few cases prior to the amendment, in 1921, of section 291 of the Cal. Code of Civ.Proc. in which the *bar association as such* appeared as the accuser, among which was San Francisco Bar Ass'n v. Sullivan, 185 Cal. 621, 198 P. 7, decided May 5, 1921 (which was shortly before said amendment became effective, July 29, 1921), but in which the question of the right of the association to so appear does not seem to have been raised. The California Legislature, by an act of May 16, 1921, effective, as aforesaid, July 29, 1921, amended said section 291 of the code of civil procedure, to permit the verification of such an accusation to be on information and belief, when *presented by an organized bar association.* Section 291, as amended, was as follows:

"291. The accusation must state the matters charged,

and be verified by the oath of some person, to the effect that the charges therein contained are true, which verification may be made upon information and belief when the accusation is *presented* by an *organized bar association.*" (Italics ours.)

This amendment expressly recognized the right of presentation by an organized bar association.

Whilst the amendment did not, in its express terms, authorize a bar association, or its officers on its behalf, to verify the accusation, it removed the safeguards theretofore assured the accused attorney by the requirement (which had been effective until such amendment) of positive verification, by permitting the verification to be on information and belief. The objective of this change in the law doubtless was to enable bar associations to function as to all phases of such a prosecution. Inasmuch as verification upon information and belief was authorized, thus relieving much of the responsibility of positive verification, there remained little reason why the courts should thereafter exclude verifications by officers of the bar association on its behalf. Doubtless following that line of reasoning, a further step, by judicial construction, was taken in the evolution of the California law upon the subject, by the opinion in the case of In re Morganstern, 1923, 61 Cal.App. 702, 215 P. 721. In that case it was held, in substance, that such an accusation, filed by an incorporated bar association, was sufficiently signed and verified when signed by the president and assistant secretary of the association, and verified by the president in his individual capacity. See, also, 9 Cal. Jur. 10 Yr.Supp. 1926–1936, p. 451.

In 1927, the act creating a public corporation known as the state bar of California was passed, St. 1927, p. 38, and, following In re Morganstern, supra, the California courts, in the later cases, have permitted the accusation in such proceedings to be *made, presented and verified* by an organized bar association, and, since its incorporation, by the state bar of California. In California there has thus been an almost complete transformation of the law

upon the subject, but in Nevada no such transformation has occurred. In this state there has been no such amendment as the California amendment of 1921, nor any amendment, of the act of 1861, and, as then, the accusation must still be *made by a person*, "and shall be verified by the oath of the *person making it*, or some other *person*, to the effect that the charges therein contained are true." (Italics ours.) N.C.L. 1929, vol. 1, sec. 608. The language employed clearly precludes, by its meaning and by the proper application of well settled and sound rules of statutory construction, any construction by this court that an accusation under the act may be made or verified by a bar association or by the Nevada state bar, as such, or by its officers acting on its behalf and not in an individual capacity. Unquestionably, the officers of the state bar of Nevada, in the instant case for revocation of respondent's license, have proceeded under the act of 1861. They have recognized that they are so doing, by merely making and verifying the accusation, and causing the same to be filed, instead of resorting to the proceedings detailed in the State bar act for cases of disbarment, suspension, and reproval. Indeed, as has been above set forth, they could not have proceeded under the State bar act, as a proceeding for revocation is not within the purview of the power or authority conferred upon the state bar and its board of governors by such act. In the cases which in past years have been brought before this court under said act of 1861, such cases have, with few exceptions, we believe, been entitled "In re" (the respondent), as: In re Schnitzer, 33 Nev. 581, 112 P. 848, 33 L.R.A.,N.S., 941; In re French, 47 Nev. 469, 225 P. 396; In re Bailey 40 Nev. 139, 161 P. 512; and In re Clarke, 46 Nev. 304, 212 P. 1037.

In most, if not all, of these cases, either certain members of the bar, or of a committee of a duly organized bar association, presented the accusations to the court, but in *making and verifying* the same, an individual

would act in his own name. This conforms to the usual conception in other states of the proper procedure under similar statutes. Exceptional cases in which a bar association, or the state bar, assumed the roll of accuser, are: Reno Bar Ass'n v. Scoular, 34 Nev. 313, 123 P. 13; Washoe County Bar Ass'n v. Scoular, 44 Nev. 208, 190 P. 899; and State Bar v. Riccardi, 53 Nev. 128, 294 P. 537, 296 P. 1013.

In Reno Bar Ass'n v. Scoular, supra, the question of the right or authority of the Reno bar association to proceed as they did was not raised.

In Washoe County Bar Ass'n v. Scoular, supra, 44 Nev. on pages 208, 209, 190 P. on page 899, the court, by Mr. Justice SANDERS stated: "The Washoe County Bar Association, through two of its duly delegated members, presented to this court two accusations." The learned Justice further stated in said opinion, 44 Nev. on page 209, 190 P. on page 899, that, "at the time appointed in the order, the accused, without objection to the form or sufficiency of the accusations, answered by denying the truth of the same." So, in that case the question of the power or authority of the association to appear as accuser, and act as it otherwise did in the matter, was not raised.

In State Bar v. Riccardi, supra, 53 Nev. on page 129, 294 P. on page 537, upon which the attorneys representing the state bar of Nevada have earnestly relied in petitioner's reply brief in the instant proceeding, Mr. District Judge Ballard, in his opinion, in reviewing the question raised by the demurrer in that case, that the petitioner had not the capacity to sue, stated:

"The demurrer presents the objection that the petitioner has not capacity to sue. The State Bar Act expressly provides that the corporation created by it 'may sue and be sued.' Stats. 1928 (Sp. Sess.) c. 13, p. 13, § 2. As the respondent has not chosen to appear in person or by attorney and has filed no brief in support of either his motion or demurrer, we are not disposed to

look beyond the statute as to this point. We therefore hold that the petitioner has capacity to sue."

It is apparent that the court considered the respondent virtually in default, and declined to give serious consideration to the demurrer. Judge Ballard, in the foregoing excerpt of the opinion, 53 Nev. on said page 129, 294 P. on page 537, mentioned that "the State Bar Act expressly provides that the corporation created by it 'may sue and be sued,' " and further stated that, "we are not disposed to look *beyond* the statute as to this point" (referring to the state bar act of 1928), but the learned judge apparently did not even look into the provisions of that statute sufficiently to discern that it was entirely inapplicable to the case of revocation of license then before the court, and he did not even mention the act of 1861, which was the only statute applicable to the case before him. (Italics ours.) Had he done so, he should, and undoubtedly would, have clearly seen that the state bar of Nevada, a public corporation, not being such a person as is contemplated by the statute, could neither make the accusation, proceed as the accusing party, nor, by its officers, verify the same. The *capacity* to "sue and be sued" must not be confused with *ability* to sue. *Ability to sue* must arise from a legal interest in the matter in litigation, and in the case of a special proceeding, penal in its nature, the corporation has no right to assume the roll of prosecutor, unless its right and authority so to do is clearly conferred by the statute upon which such proceeding is predicated. For example, it certainly could not be reasonably contended that a bar association, or any corporation, because it is given "capacity to sue and be sued," could usurp the functions of the district attorney or the attorney general, and institute and carry on a prosecution for a felony. There is, obviously, more required to authorize such a corporation so to do than the mere *capacity to sue*. It is also clearly obvious that a corporation could not properly sue in regard to property in which it had no legal interest, merely because of general capacity to sue. The

Riccardi case cannot be regarded as authority for the petitioner in the instant case, nor of any real value as a precedent upon the question now before us, and we do not believe that it was so intended by the members of the court at that time.

We believe the special demurrer in the instant case is well taken, upon the ground that the state bar of Nevada has not the capacity to sue, that is to say, that under the provisions of the said act of 1861, such corporation can neither *make* the accusation, nor can its officers, *as such and for and on its behalf*, verify the same.

It is unnecessary, in view of this ruling, to pass upon respondent's motion to strike.

The special demurrer of the respondent is sustained.

EATHER, C. J., concurs.

BADT, J., (concurring) :

I concur upon the sole ground that the petitioner must find its authority to proceed as the state bar of Nevada, a public corporation, under the state bar act of 1928, to which act it must look for its very existence as well as for its power and authority. This course, however, for reasons which I shall not attempt to assume or analyze, it deliberately rejected, as well as rejecting the procedure therein outlined for hearings before the local administrative board and the board of governors. Assuming that the charge and verification are otherwise sufficient to satisfy the provisions of the act of 1861, we are still confronted with the fact that petitioner has not been authorized to initiate a proceeding such as the one before us. If a remedy is needed, which may or may not be so, it is for the legislature to provide.