**TEXAS INTERNATIONAL AIRLINES, INC. and Texas Air Corp., Plaintiffs,**

v.

**Richard BRYAN, Attorney General of the State of Nevada, Calvin R. X. Dunlap, District Attorney of Washoe County, and Continental Air Lines, Inc., Defendants.**

Civ. No. R–81–27 BRT.

United States District Court,
D. Nevada.

Oct. 2, 1981.

Lionel Sawyer & Collins, Richard W. Horton and Charles H. McCrea, Jr., Reno, Nev., Hughes, Hubbard & Reed, George A. Davidson, New York City, for plaintiffs.

Hawkins, Rhodes, Sharp, Barbagelata & Haase, Prince A. Hawkins, F. DeArmond Sharp, M. Craig Haase, Reno, Nev., Latham & Watkins, Alan N. Halkett, Los Angeles, Cal., Wachtell, Lipton, Rosen & Katz, Michael W. Schwartz, New York City, for Continental Airlines.

## ORDER GRANTING SUMMARY JUDGMENT

BRUCE R. THOMPSON, District Judge.

This action was commenced by Texas International Airlines, Inc. and Texas Air Corp. (Texas) to enjoin enforcement of Nevada's Takeover Bid Disclosure Act. The original defendants were Richard Bryan, Attorney General of Nevada, Calvin R. X. Dunlap, District Attorney of Washoe County, and Continental Airlines, Inc. (Continental), the target corporation. The pertinent provisions of the Nevada statute are:

78.3771 Disclosure.

1. At least 30 days prior to the making of a takeover bid, the offeror shall file with the resident agent of the offeree corporation a statement containing the following information:

(a) The name, address and business experience of the offeror and each associate of the offeror;

(b) The terms and conditions of the takeover bid, which shall include the applicable provisions of NRS 78.3772;

(c) The source and amount of the funds or other consideration used or to be used in making the takeover bid, and if any part of such funds or consideration is represented or is to be represented by funds or other consideration borrowed or otherwise obtained for the purpose of making such bid, a description of the transaction and the names of the parties thereto, except that where a source of funds is a loan or loans made in the ordinary course of business by a bank or financial institution customarily engaged in the business of making loans, it will be sufficient so to state;

(d) Any plans or proposals that the offeror may have to liquidate the offeree corporation, to sell its assets to or merge it with any other person, or to make any other material change in its business or corporate structure;

(e) The number of offeror's presently owned shares, and a description of any which are not stock or a similar security; and

(f) Information as to any contracts, arrangements or understandings with any person with respect to any securities of the offeree corporation, including but not limited to transfer of any of the securities, joint ventures, loan or option arrangements, puts or calls, guaranties of loans, guaranties against loss or guaranties of profits, division of losses or profits, or the giving or withholding of proxies, naming the persons with whom such contracts, arrangements or understandings have been entered into, and giving the details thereof.

78.3774  Civil liabilities.

2.  Any offeror who:

(a) Makes a takeover bid which does not comply with the provisions of NRS 78.3771 or 78.3772; or

(b) Makes a takeover bid by means of an untrue statement of a material fact or any omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, where the offeree does not know of such untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, is liable to any offeree whose shares are taken up pursuant to the takeover bid.

3.  An offeree who is entitled to recover pursuant to subsection 2 may bring an action:

(a) To recover such shares, if the offeror still owns them, together with all dividends or interest received thereon, costs and reasonable attorneys' fees, upon the tender of the consideration received from the offeror; or

(b) For the substantial equivalent in damages.

78.3776  Void conditions, stipulations; additional rights, remedies.

2.  The rights and remedies provided by NRS 78.376 to 78.3778, inclusive, are in addition to any other rights and remedies that may exist at law or in equity.

78.3778  Unlawful takeover bids; separate offenses.

1.  Any offeror who makes a takeover bid which does not comply with the provisions of NRS 78.3771 and 78.3772 is guilty of a gross misdemeanor.

2.  Each offer in violation of NRS 78.376 to 78.3778, inclusive, by advertisement or to a particular offeree constitutes a separate offense under this section.

The theory of the complaint was that the Nevada statute is unconstitutional under the Supremacy Clause of the Constitution because the Williams Act (15 U.S.C. §§ 78m(d)–(e), 78n(d)–(f)) had preempted the subject matter of the state legislation. In particular, plaintiffs desired not to comply with the 30-day disclosure requirement to the target corporation required by the Nevada statute and sought injunctive relief against enforcement of the criminal sanctions for noncompliance. A temporary restraining order and preliminary injunction were granted. Plaintiffs proceeded with their tender offer to Continental shareholders and violated the Nevada law. Subsequently, defendants Bryan and Dunlap were dismissed from the action by stipulation, including an agreement not to prosecute Texas for the violation. Continental filed an answer and counterclaim. A pretrial order was entered and the action was set for trial. Before trial Texas filed a motion for summary judgment.

The position of Continental is that it is entitled to proceed to judgment on its counterclaim for injunctive relief and show that the Nevada Takeover Disclosure Act is in fact constitutional, and that Texas's violation of the Act gave rise to a right of action in the target corporation for "an injunction requiring either proportionate voting or divestiture by Texas" of shares of Continental stock acquired in violation of Nevada law.

Texas, in its motion for summary judgment, does not argue the merits of the constitutionality issue. The motion is predicated solely on the contention that Continental lacks standing to maintain its counterclaim because a right of action in the

target corporation cannot be implied from the Nevada statute. This is exclusively an issue of interpretation of state law and our study of the Nevada precedents leads us to the conclusion that plaintiffs' contention is correct. Both parties have discussed and relied upon federal decisions dealing with implied rights of action under the Williams Act, *see*, for example, *Piper v. Chris-Craft Industries*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977), but these are not particularly helpful or persuasive in solving an issue of state statutory interpretation.

The Nevada Takeover Bid Disclosure Act provides specific civil remedies in favor of an offeree (NRS 78.3774(2)) *supra*, and specific criminal penalties for violations by an offeror (NRS 78.3778) *supra*. No remedy in favor of the target corporation is mentioned. In these circumstances, the maxim of statutory construction *expressio unius est exclusio alterius* is applicable. Nevada has long recognized and applied this maxim to the interpretation of legislation. *Ex Parte Arascada*, 44 Nev. 30, 189 P. 619 (1920). The *Arascada* case is not factually pertinent to the case at bar, inasmuch as it was concerned with the construction of a constitutional provision enumerating cases in which concurrent jurisdiction could be granted to the justice courts and district courts.

In the year 1876 the Nevada Supreme Court had occasion to construe a special statute concerning elections to determine contests for members of the legislature. It held the statutorily prescribed remedies to be exclusive. *Garrard v. Gallagher*, 11 Nev. 382 (1876).

In *State Bar v. Sexton*, 64 Nev. 459, 184 P.2d 356 (1947) the Nevada Supreme Court sustained a demurrer to a petition filed by the State Bar of Nevada to revoke respondent's license to practice law. The State Bar Act had granted to the board of governors the right to initiate proceedings for the disbarment, suspension or reproval of a licensed practitioner. No mention was made of a petition to revoke the license to practice. The court said:

We believe the rule, or principle, of interpretation, "expressio unius est exclusio alterius" is clearly applicable in the interpretation of the powers conferred by section 26 of the state bar act (same being section 565, vol. 1, N.C.L.1929), and that neither the state bar of Nevada, a public corporation nor its board of governors, has any power or authority whatever in relation to proceedings to remove an attorney by revoking the order of his admission or his license to practice, or by striking his name from the roll of attorneys entitled to practice law in Nevada. 50 Am.Jur. sec. 429, p. 450.

For this court, by judicial construction, to read into the act a provision for revocation, upon the theory of implied power, would be so clearly violative of fundamental rules of statutory construction, and in such obvious disregard of the legislative intent, as to amount to a judicial usurpation of the powers vested by the constitution exclusively in the legislature.

The case of *Hamm v. Carson City Nugget, Inc.*, 85 Nev. 99, 450 P.2d 358 (1969) involved the issue of implying a private right of action from a criminal statute making it unlawful for a saloon or bar to sell intoxicants to a person who is drunk. The court decided that the controlling consideration was one of public policy and whether the court or legislature should declare it. It emphasized that the intent of the legislature should control and said:

> The statute before us is but one of many in the statutory scheme regulating the sale of tobacco and intoxicating liquor to minors and drunkards. The section immediately preceding NRS 202.100 (NRS 202.070) does impose a limited civil liability upon the proprietor of a saloon who sells liquor to a minor. By providing for civil liability in one section and failing to do so in the section immediately following, the legislature has made its intention clear. Accordingly, we must conclude that a violation of NRS 202.100 does not impose civil liability upon one in charge of a saloon or bar, nor is such a violation negligence per se.

*See also: Mills v. Continental Parking Corp.*, 86 Nev. 724, 475 P.2d 673 (1970). The emphasis in *Hamm, supra,* on the absence of an indication of legislative intent to impose implied civil liability was reaffirmed in *Davies v. Butler*, 95 Nev. 763, 602 P.2d 605 (1979).

Finally, we cite the case of *Moen v. Las Vegas International Hotel, Inc.*, 402 F.Supp. 157 (D.Nev.1975), *aff'd*, 554 F.2d 1069 (9th Cir. 1977), in which this court decided adversely to plaintiff a contention that a private right of action could be implied from a statute prohibiting an employer from taking the tips or gratuities bestowed on an employee. The court said:

> Another problem inherent in the case is whether NRS § 608.160 gives rise to a private action for damages on behalf of any employee. We note that NRS § 608.-190 provides for enforcement by an action for a penalty to be prosecuted in the proper court by the District Attorney of the County at the instance of the Labor Commissioner. We also note that NRS § 608.160 is part of Chapter 608 of the Nevada Revised Statutes encompassing "compensation, wages and hours generally," and that violations of many provisions of that Chapter have a criminal sanction and are made misdemeanors, and that NRS § 608.140 specifically creates a cause of action for wages earned and unpaid and penalties and a reasonable attorney's fee. No such provision is applicable to NRS § 608.160.
>
> . . . .
>
> The legislative history shows that legislation of this type was initially passed to protect the public against a presumed fraud and that the 1971 amendment merely established greater assurance that a customer who wanted to "toke" an employee would not ultimately learn that he had merely enriched the coffers of the employer. We have already indicated the statutory framework from which we have drawn an inference of legislative intent implicitly to deny a private remedy and from which we have concluded that it is inconsistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff.

In the *Moen* case this court applied the *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), analysis to whether a private right of action should be implied. Although many state courts have expressly applied the *Cort v. Ash* rationale to a problem of statutory construction, we have found no opinion of the Nevada Supreme Court which does so. Nevertheless, as in the *Moen* case (at p. 161), we would give a negative answer here to each of the important factors emphasized in *Cort v. Ash*.

The plaintiffs' motion for summary judgment points out that bills were introduced in the 1979 Nevada legislature to amend the Nevada Takeover Bid Disclosure Act to provide for the availability of injunctive relief at the behest of the target corporation. This proposed remedial legislation was not approved by the legislature. Stronger evidence of legislative intent would, in this state, be difficult to unearth.

Defendant has cited and relied upon two cases (other than those in the federal arena). The Nevada case is *Alper, et al. v. L.V. Motel Assn.*, 74 Nev. 135, 325 P.2d 767 (1958). In *Alper* a Nevada statute imposed criminal penalties for violations of regulations of motel advertising. The Supreme Court approved injunctive relief to restrain violation of the ordinance and protect an invasion of property rights. The court expressly disavowed creation of a precedent where no property rights are involved. By contrast, the takeover bid statute expressly provides civil remedies for the offeree, an element not present in *Alper*, which provokes application of the maxim "*expressio unius est exclusio alterius*", and here we have no showing of injury to the property rights of the target corporation.

Continental also relies upon *Wylain, Inc. v. TRE Corp.*, 412 A.2d 338 (Del.Chancery 1979, 1980) involving the Delaware Tender Offer Act. This action sustained a preliminary injunction on complaint of the target corporation against the offeror companies. The problem of whether under Delaware law a cause of action in the target corpora-

tion could properly be implied was not at all in issue or discussed. This may well be because the Delaware provision for civil remedies is much different from Nevada's. Delaware law provides:

> (e) The Court of Chancery is hereby vested with exclusive jurisdiction summarily to hear and determine alleged violations of this section. The Court may, in its discretion, award such relief as it may deem just and proper, including directing the corporation to refuse to transfer on its books and to refuse to recognize the vote with respect to any equity security acquired pursuant to a tender offer which does not comply with or is not exempt under this section. (60 Del.Laws, c. 371, § 1.)

The foregoing direct grant of jurisdiction obviates any need to sustain the existence of an implied right of action in the target corporation.

Finally, what is the effect of the savings clause in NRS 78.3776(2), *supra?* Under the facts of this case it has no effect. Prior to the enactment by Congress of the Williams Act and the subsequent adoption by the Nevada legislature, and other state legislatures of takeover statutes, the subject matter was entirely unregulated and there were no rights or remedies at law or in equity to control, enjoin or regulate takeover offers. It was the absence of such rights and remedies which prompted the legislation.

In consideration of the premises,

*IT HEREBY IS ORDERED* that plaintiffs' motion for summary judgment be, and it hereby is, granted.